## Case No. 2,783.

### In re CLAP.

### Ex parte TARBELL.

[2 Lowell, 168.] [1]

District Court, D. Massachusetts. Sept., 1872.

BANKRUPTCY—PARTNERSHIP DEBTS — DECEASE OF PARTNER—RIGHTS OF CREDITORS.

1. Upon the death of one member of a firm, the survivor is bound in equity to apply the joint estate to the payment of the joint debts; and the representatives of the deceased partner, and, in case of bankruptcy, the creditors of the firm may enforce this equity.

2. A partner, by his will, made his brother, who was his copartner, executor, and devised to him the residue of his estate in trust for certain purposes, and authorized him to use in

¹ [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

his business the property given him in trust, until it should be wanted for distribution. *Held,* that the intent of the will was, that the residue only should be used in business, and that the surviving partner was bound to settle the affairs and pay the debts of the firm in the usual way, notwithstanding this clause.

3. The surviving partner carried on the business as before, and notified creditors and others dealing with him that his brother's capital remained in the business; he paid the greater part of the joint debts, and contracted new debts; he converted a part of the joint property into money, but less in value than the sum of the joint debts, and became bankrupt, having in his possession bank-stock and other specific assets standing in the name of the firm, without change, since the death of his brother,—*Held,* that a joint creditor of the old firm, who had not received the notice above mentioned, could require that joint property remaining in specie, as it stood at the death of the deceased partner, should be applied to the payment of his debt in exclusion of the separate creditors of the bankrupt.

4. It seems, if the creditor had received the notice, it would not have affected his lien, unless he had done some act amounting to an election.

5. The fact that the surviving partner was executor and trustee of the deceased partner does not affect the rights of joint creditors, for equitable rights are not lost by the union or merger of different legal titles in one person; and, when bankruptcy occurs, the creditors may themselves assert the lien, which, while the surviving partner is solvent, is vested in the executor of the deceased partner.

The petitioner asked to have the assets marshalled by the trustee appointed, and acting instead of an assignee, under section 43 of the bankrupt act [14 Stat. 538]. The parties agreed to the facts, which were substantially these: Samuel G. Clap and Edmund W. Clap were partners for many years under the firm of Clap & Brother, and during that time the petitioner lent them $10,000, for which he held their firm notes. Samuel died in 1870; and Edmund carried on the business under the same name, until his bankruptcy in 1872, and used therein the assets of the old firm, of which several persons dealing with him, some of whom are now creditors, had notice; but the petitioner had no such notice. Edmund had drawn out of the firm, at the time of his brother's death, a very large sum beyond what Samuel had drawn. Since that time he had paid the old debts beyond the specific joint assets then on hand, if his indebtedness to the firm is omitted from the computation; but if that were counted in, he was still in arrears to the firm at the time of his bankruptcy. There then remained, and have come to the possession of his trustee, specific assets, consisting of bank-stock, real estate, &c., which was the property of the old firm. By his will, Samuel Clap, after giving to his wife certain chattels and a life-estate in his house, provided as follows: "3d. I give the residue, including the reversion of the house so given to my wife, of all the estate of which I shall be possessed at my decease, to my brother, Edmund W. Clap, for ever, in trust, for the uses hereinafter set forth," authorizing the trustee to sell, invest,

&c. He then provides for a division of the income between his wife and his two daughters during their lives, giving large discretion to the trustee to advance money to the daughters out of the principal, in certain contingencies; he appoints the same brother executor; and, finally, 11th. "My brother is authorized to employ and use in his business the estate and property herein given him in trust, or any part thereof, before the same shall be required for distribution, charging himself with interest therefor at six per cent." The petitioner asked that an account be taken of the joint assets remaining at the time of the bankruptcy, and that the same be applied to the payment of his debt, before any part thereof should go to the separate debts of the bankrupt.

C. B. Goodrich, for petitioner.
W. A. Field, for respondents.

LOWELL, District Judge. The petitioner asks that the trustee may be ordered to keep distinct accounts of the joint and separate estates, and that the proceeds of each may be appropriated to the corresponding class of debts. The bankrupt act—section 36 [14 Stat. 534]—requires this to be done when partners are bankrupt, but does not, in so many words, refer to the bankruptcy of one partner only; but there is no doubt that it applies generally to all settlements in bankruptcy, whether one or all the partners are before the court. Under a similar section in the insolvent law of Massachusetts, it was held that separate accounts ought to be kept whenever there were joint debts still outstanding, whether there remained joint assets or not, and whether one or more of the partners were before the court: Barclay v. Phelps, 4 Metc. [Mass.] 397; Howe v. Lawrence, 9 Cush. 553; Harmon v. Clark, 13 Gray, 114; Robb v. Mudge, 14 Gray, 539. These cases, and others cited by the respondent for another purpose, which will be noticed presently, carry the doctrine to its utmost length, by deciding that, in the absence of positive fraud, the joint creditors have no claim on what was once specifically joint property, and has been converted into separate property by the agreement of the parties. I have expressed my doubt on former occasions whether some of these cases do not go too far; but I will not discuss them now, because they are not cases which concern a dissolution of the copartnership by the death of a partner. In such a case, the representatives of the deceased partner have a right to require the survivor to apply the joint property to pay the joint debts; and, if he becomes bankrupt, the joint creditors may insist that this shall be done: Story, Partn. § 361; Lindl. Partn. 577; Evans v. Evans, 9 Paige, 178; Stocken v. Dawson, 9 Beav. 239, affirmed 17 Law J. Ch. 282; Tillinghast v. Champlin, 4 R. I. 173. The supreme court has applied this equity in favor of joint creditors as against the United States, claiming a priority for a separate debt of one of the partners, and in favor of separate creditors as against joint creditors, under a trust deed which was ambiguous on its face, but dealt only with separate property: U. S. v. Hack, 8 Pet. [33 U. S.] 271; Murrill v. Neill, 8 How. [49 U. S.] 414.

Partnership debts being in equity joint and several, it has been held in some cases that, in the settlement of the estates of deceased persons, all creditors come in equally against the separate assets. Such was formerly the law of Massachusetts, when estates of deceased persons were insolvent: Sparhawk v. Russell, 10 Metc. [Mass.] 305. But a statute has changed the rule in that state, and the same mode of marshalling applies, whether the insolvent is dead or living: Gen. St. c. 99, § 18; Rice's Case, 7 Allen, 112. I am not aware that it ever was held that the separate creditors could claim against joint assets, until the joint creditors were satisfied. The superior position of the joint creditors was founded on the higher nature of their security, being several as well as joint. See the able note of the American editors to Silk v. Prime, 2 [White & T.] Lead Cas. Eq. 111. So that, even when the law of Massachusetts permitted the joint creditors an equal share of separate assets, I suppose a court of equity would have given the surviving partner a prior right to joint assets. But however this may be, it has always been the rule in equity, when a living person was bankrupt, that the assets should be marshalled.

The respondent, not denying the general proposition, insists that this case does not come within it; because the late Samuel G. Clap has, by his will, relinquished the lien, and that the bankrupt has so dealt with the property as to convert it into his separate estate. The cases cited establish the doctrine already referred to, that where partners, acting in good faith, whether before or after the dissolution of the firm, convert the joint into separate property, in whole or in part, the creditors are bound by that action; because their lien depends on that of the partner himself, and, if he has in good faith relinquished it, they cannot revive it. Whatever was done here is admitted to have been done in good faith; and there is no intimation even of a knowledge of insolvency on the part of the present bankrupt, at any time before he filed his petition, so that, if these cases apply, he comes within them. But I do not read the will as making any such severance. The residue is given to the surviving partner upon certain trusts, and he is authorized to use, in his business, "the estate and property herein given him in trust, or any part thereof, before the same shall be required for distribution." This language is broad enough, perhaps, to include the whole property; because he held it all in trust, either as executor or trustee; but, in the connection in which it is found, it clearly means the trust

fund, as I believe both parties concede. The residue, which is to constitute the trust fund, cannot be ascertained until debts as well as legacies are paid. I can find nothing in the will that contemplates a continuance of the business in the old name, nor any gift of the whole joint estate to Edmund, in order that he might continue it; nothing, in short, that binds the testator legally or equitably for new debts, or relinquishes the right of his representatives to insist that the old debts shall be paid, and the business of the firm shall be wound up in the usual way. If, by the will, the surviving partner is possessed of the whole estate, in one capacity or another, still his duty is the same in either: Wedderburn v. Wedderburn, 4 Mylne & C. 41. Equity never permits equitable rights to be lost by the merger or union of different legal titles in one person; and, when bankruptcy occurs, the joint creditors may assert the lien which before that time was vested in the executor of the deceased partner. It may be that there is a stronger legal hold upon him to do as executor what he would be bound to do as surviving partner; I mean to say, a remedy for a breach of duty may be simpler, but the duty is the same, to wind up the business, pay the joint debts from the joint assets, and dispose of the testator's share, as required by his will. If he had, in fact, converted all the joint assets into money, and paid it away, the lien might have been lost; but he has not done so. The case finds that there are specific assets, consisting largely of bank-stock, remaining in his hands, in the same condition that they were in at his brother's death; and the lien, certainly, has not been displaced from these.

Nor can the fact that he retained Samuel's property, and did business thereon, and so notified some of his creditors, affect the rights of the petitioner, who was not notified. Indeed, it is very doubtful whether notice would make any difference: Newsome v. Coles, 2 Camp. 617. It being found that this action was not in accordance with the will, nothing but a legal or equitable estoppel can change the rights of the parties. The rule that chattels and personal property, left in the order and disposition of a bankrupt by the consent of the true owner, are to be held for his debts, has never had a place in the more recent bankrupt and insolvent laws of this country, and certainly has none in our present law. And even in England a surviving or remaining partner does not hold the joint assets in his order and disposition in this sense, unless the other partner was dormant, or unless there was an express agreement to that effect, because he holds in trust to pay the joint creditors: Colly. Partn. § 883; and, a fortiori, if he holds under a will which is notice to all the world. This case, in its present aspect, does not bring up the whole account for settlement; and I do not know precisely what proportion of the joint assets have been converted. If it should turn out that there is any balance due the bankrupt on the final adjustment, no doubt that will go to his separate creditors. In the absence of fraud or preference, I cannot review the acts of the surviving partner in paying either joint or separate debts, both of which I suppose he continued to pay until he found he must suspend. I understand that proceedings will be taken by the representative of Samuel Clap to settle the partnership account, and I do not now decide whether any balance which would be otherwise due that estate will be affected with any equity in favor of Edmund's creditors, by reason of the permission to use the trust fund in business. Petition granted.